UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: MICHAEL VERNON SHANKLE          CASE NO. 05-16971-DWH
                                                                                               CHAPTER 7

DIANNE SHANKLE                                                      PLAINTIFF

VERSUS                                                                            ADV. PROC. NO. 05-01295-DWH

MICHAEL VERNON SHANKLE                                         DEFENDANT

## OPINION

On consideration before the court is a complaint filed by Dianne Shankle, ("plaintiff"), against the debtor, Michael Vernon Shankle, ("defendant"), seeking to deny the dischargeability of certain marital obligations that were judicially established in a divorce decree when the plaintiff and the defendant were divorced in Benton County, Arkansas; an answer and affirmative defenses having been filed by the defendant; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core adversary proceeding as defined in 28 U.S.C. § 157(b)(2)(I).

II.

In the pretrial order, the plaintiff and the defendant stipulated to the following facts:

1. Debtor Michael Vernon Shankle was ordered to pay alimony and child support to Dianne Shankle and to divide certain accounts which were marital property

pursuant to a Decree of Divorce entered by the Chancery Court of Benton County, Arkansas on August 25, 1999, and subsequent Orders of modification.

2. By Order entered September 13, 2000, Debtor Michael Vernon Shankle was ordered to pay alimony arrearage, attorney's fees, court costs and medical bills to Dianne Shankle and to divide certain accounts which were marital property.

3. By Order entered August 7, 2001, Debtor Michael Vernon Shankle was again ordered to pay alimony arrearage, attorney's fees, court costs and medical bills to Dianne Shankle, to pay child support arrearages and to reimburse Dianne Shankle for costs to provide the child's medical and dental insurances, and to divide certain accounts which were marital property.

4. By Order entered August 8, 2002, Debtor Michael Vernon Shankle was again held in contempt and ordered to pay child support, alimony, fees and costs, and divide marital property.

5. By Order entered December 20, 2002, Debtor Michael Vernon Shankle was ordered to pay additional legal fees to Dianne Shankle.

6. By Order entered July 5, 2005, Debtor Michael Vernon Shankle was ordered to pay past due child support and alimony and to pay towards the medical expenses of the parties' minor child.

7. True and correct copies of the above mentioned Decree of Divorce and Orders were attached to the Adversary Complaint.

8. The above mentioned Decree of Divorce and Orders constitute public records pursuant to the Federal Rules of Evidence.

9. Debtor Michael Vernon Shankle was found guilty of "Nonsupport," a Class A Misdemeanor, in the Circuit Court of Benton County, Arkansas.

10. A true and correct copy of the Order finding the Debtor Michael Vernon Shankle guilty of "Nonsupport," a Class A Misdemeanor, in the Circuit Court of Benton County, Arkansas was attached as an exhibit to Requests for Admission.

11. The above mentioned Order finding the Debtor Michael Vernon Shankle guilty of "Nonsupport," a Class A Misdemeanor, constitutes a public record pursuant to the Federal Rules of Evidence.

12. A true and correct copy of the Conditions of Suspension or Probation signed by the Debtor Michael Vernon Shankle and filed of record in the Circuit Court of Benton County, Arkansas constitutes a public record pursuant to the Federal Rules of Evidence.

14. By Order and Judgment filed July 26, 2006 in the Circuit Court of Benton County, Arkansas, the parties stipulated that Debtor Michael Vernon Shankle was liable to Dianne Shankle for the following amounts: Child Support - $11,785.32; Alimony - $21,593.31; Insurance Premiums for the Children - $7,458.30; Medical Bills and Copays for the Children - $6,206.95; Medications for the Children - $603.02; Attorney's Fees (with interest) - $2,928.20; and Marital Property awarded by Decree of Divorce - $97,435.91.

15. That Debtor Michael Shankle has listed in his Schedule F (Creditors holding Unsecured Nonpriority Claims), a "disputed" debt of $141,000.00 owed to Dianne Shankle, his ex-wife.

In addition, the parties, prior to trial, stipulated that the following obligations owed by the defendant are non-dischargeable debts pursuant to § 523(a)(5) of the Bankruptcy Code, to-wit:

> Child support, alimony, insurance premiums for the children, dental insurance premiums for the children, medical bills and co-pays for the children, medications for the children, and attorney's fees with interest.

As a result of the most recent stipulation, this adversary proceeding has narrowed to a determination of whether the obligation set forth in paragraph 11 in the parties' Decree of Divorce is a non-dischargeable debt. That paragraph reads as follows:

> "11. The Court finds the following items of personal property are marital property, and shall be equally divided between the parties: Idex Mutual Fund with an approximate balance of $80,000.00; Baker-Hughes Stock in the approximate amount of $4,000.00; Invesco Mutual Fund with an approximate balance of $100,000.00."

### III.

In her complaint, the plaintiff bases her claims for non-dischargeability on § 523(a)(5), § 523(a)(6), and § 523(a)(15) of the Bankruptcy Code[1]. These sections are set forth as follows:

**11 USC § 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –

. . . .

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that–

---

[1] Hereinafter all Code sections will be considered as sections of the United States Bankruptcy Code unless specifically designated otherwise.

> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State of any political subdivision of such State); or
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.
>
> . . . .
>
> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless–
>
> > (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
> > (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

Since the defendant's Chapter 7 bankruptcy case was filed on October 5, 2005, prior to the effective date of the Bankruptcy Abuse Prevention Consumer Protection Act of 2005 (BAPCPA), the versions of the Code sections, set forth hereinabove, are those that apply to this adversary proceeding.

Because of the parties' stipulation at trial that the obligations, set forth hereinabove, are non-dischargeable because they are indeed in the nature of support, alimony, or maintenance, the court will not be required to further address § 523(a)(5).

The court is of the opinion that the obligation set forth in paragraph 11 of the divorce decree orders a division of the marital assets of the parties. The court will, therefore, address § 523(a)(6) which is dispositive of this proceeding. Should the need arise, the court reserves the right to consider subsequently § 523(a)(15), but will not do so in this opinion.

### IV.

The Benton County Chancery Court expressly ordered the equal division of the Idex Mutual Fund, the Baker Hughes Stock, and the Invesco Mutual Fund. Based on the assigned values, this division would have resulted in each party receiving approximately $92,000.00.

The defendant testified that he was extremely upset with the divorce decree, particularly the conclusion in paragraph 15, where the court did not require the plaintiff to account for $41,000.00, which she removed from the parties joint bank account at the time of and after their separation. The court specifically stated that the defendant was not entitled to recover any of these monies from the plaintiff.

The defendant appealed the decision of the chancery court in granting the divorce decree. However, his appeal was denied by the Arkansas appellate court which affirmed the chancery court.

Although the defendant is obviously aggrieved at what happened in the state court proceeding, this court is not permitted to review the substance of the chancery court decision. The *Rooker-Feldman* doctrine provides that lower federal courts lack jurisdictional authority to sit in appellate review of state court decisions.

The *Rooker-Feldman* doctrine derives its name from two United States Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed.362 (1923), holding that

the jurisdiction of the federal district courts is strictly original, and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), holding that federal district courts do not have the authority to review final state court judgments. *See, United States v. Shepherd*, 23 F.3d 923 (5th Cir. 1994) and 28 U.S.C. § 1257, which provide that federal appellate jurisdiction over state court decisions is vested almost exclusively in the United States Supreme Court. *See also, In the Matter of Erlewine (Ingalls v. Erlewine)*, 349 F.3d 205 (5th Cir. 2003), and *In the Matter of Reitnauer (Reitnauer v. Texas Exotic Feline Found., Inc.)*, 152 F.3d 341 (5th Cir. 1998). Consequently, this court can only determine whether the defendant's refusal to divide the marital assets, which creates a claim in favor of the plaintiff against the defendant, constitutes a non-dischargeable debt in the defendant's bankruptcy case.

V.

Although most of the following factual events were stipulated by the parties, the court will review some of the more pertinent occurrences:

1. The division of the three accounts, i.e., the Idex Mutual Fund, the Baker-Hughes Stock, and the Invesco Mutual Fund, wherein each party would be entitled to approximately $92,000.00 in proceeds, was first ordered in the divorce decree on August 24, 1999. (Exhibit D-1)

2. Soon thereafter, on October 19, 1999, the defendant withdrew all of the funds in the Invesco account in the total sum of $114,222.83, and had these proceeds remitted to John Hancock Signature Service for his benefit. The defendant testified that he considered this withdrawal to be his one-half of the proceeds from the three accounts, which, of course exceeded his estimated share of $92,000.00.

However, he adamantly refused to tender any portion of the Invesco proceeds or the remaining two accounts to the plaintiff. (Exhibit P-11)

3. By an order of the Chancery Court of Benton County, dated September 13, 2000, the defendant was found to be in contempt of court for his failure to divide the three accounts, as well as, for his failure to pay other sums ordered by that court. (Exhibit D-2)

4. On August 6, 2002, the Circuit Court of Benton County, found that the defendant had failed to divide the three accounts as ordered by the divorce decree, as well as, the subsequent order, dated September 13, 2000. (This court assumes that sometime after calendar year 2000, the Chancery Court of Benton County merged into the Circuit Court.) Accordingly, the court ordered the defendant to pay over to the plaintiff within ten days from the entry of the order one-half of the value of the three accounts as of the date of the entry of the divorce decree, plus interest at the rate of 10% per annum beginning upon the entry of the divorce decree. (Exhibit D-3) The significance of this order is that it established a 10% interest rate to accrue on the estimated value of the plaintiff's one-half interest in the three accounts effective August 24, 1999.

5. Also, on August 6, 2002, the Circuit Court of Benton County concluded that the defendant was in willful contempt of court because he had failed to comply with the previous orders of the court. The court ordered the defendant to execute documentation necessary to transfer the defendant's interest in the Idex account

and the Baker-Hughes account to the plaintiff so that the said accounts would be transferred in their entirety. (Exhibit D-4)

6. Through a letter from Transamerica Idex Mutual Funds, dated May 26, 2006, the defendant was advised that on August 14, 2002, two transfers were made to the plaintiff in the sums of $39,242.72 and $11,213.41, for a total of $50,456.13. (Exhibit P-14) The defendant testified that because of market declines, these were the only funds remaining in the Idex account. As a consequence, the plaintiff received from this account slightly less than what she would have received had the defendant transferred one-half of the existing balance at the time of the divorce, considering that interest had accrued on her one-half interest at the rate of 10% per annum (approximately $4,000.00 per year from August 24, 1999 through August 14, 2002). The Baker-Hughes account was apparently transferred to the plaintiff, but the court was never advised as to the precise amount of this transfer.

7. By an order dated July 24, 2006, the Circuit Court of Benton County found that the defendant was liable to the plaintiff for the following amounts, all arising out of the original divorce decree between the parties:

| | | |
|---|---|---|
| A) | Child Support | $11,785.32 |
| B) | Alimony | $21,593.31 |
| C) | Insurance premiums for the children | $ 7,458.30 |
| D) | Dental insurance premiums for the children | $ 1,923.39 |

| | | |
|---|---|---|
| E) | Medical bills and co-pays for the children | $ 6,206.95 |
| F) | Medications for the children | $ 603.02 |
| G) | Attorney's fees (with interest) | $ 2,928.20 |
| H) | Marital Property awarded by Decree of Divorce to Plaintiff but never tendered by Defendant (with interest) | $97,435.91 |

The court awarded a judgment against the defendant in favor of the plaintiff in the total sum of $149,934.40, with interest to accrue thereon beginning June 6, 2006, at the rate of 8% per annum. (Exhibit D-5)

VI.

The defendant obviously disagreed strenuously with the results of the domestic relations proceedings in the Chancery Court of Benton County. However, this court cannot change those results, nor can the defendant be permitted to disregard the orders of that court with impunity. The question that the court must answer is whether the defendant violated § 523(a)(6) of the Bankruptcy Code by willfully and maliciously defying the state court orders, which, in turn, caused an economic injury to the plaintiff. Had the defendant divided the accounts as ordered at the time of the divorce decree, he would not be in the predicament in which he finds himself today.

Initially, the defendant withdrew the full amount of the Invesco account which exceeded the estimated $100,000.00 value by $14,222.83. As set forth hereinabove, this is evidenced by

the check in the sum of $114,222.83, which the defendant had issued to John Hancock Signature Service for his benefit.

Until the Circuit Court of Benton County entered its order, dated August 6, 2002, the defendant took no action whatsoever to transfer any part of the Idex account or the Baker-Hughes account to the plaintiff. From the date of the divorce, the Idex account apparently dissipated significantly, due to market declines, until the plaintiff received the two transfers, totaling $50,456.13, which was the remaining balance in that account. Although the evidence is at best inconclusive, the defendant implied that the plaintiff caused this account to be frozen, but the plaintiff denied doing so. (Parenthetically, if anyone at Idex had become aware of the divorce decree or the subsequent state court orders, the account would likely have been frozen or a hold placed thereon for the self protection of Idex.) Had the defendant not defied the divorce decree, this would not even be an issue.

Indeed, considering how this entire scenario has unfolded, the defendant has been his own worst enemy. Not only could he have prevented the Idex account from deteriorating in value to the plaintiff's disadvantage by timely dividing the balance, he could have prevented the accrual of interest from the date of the divorce to the present.

Without question, the Benton County courts considered the defendant's conduct to be willful and contemptuous. He was found in contempt on multiple occasions and served at least two jail sentences.

From what this court can discern, the plaintiff has now received almost what she was entitled from the Idex account and perhaps what she was entitled from the Baker-Hughes account. Consequently, the plaintiff's claim, which she seeks to have excepted from discharge,

can be calculated on the basis of what the defendant failed to provide to her from the Invesco account, plus interest accruing from the date of the divorce decree. This calculation appears to have been undertaken by the Circuit Court of Benton County in its order dated July 24, 2006, (Exhibit D-5). The court concluded that the marital property awarded to the plaintiff, but never tendered by the defendant, had a value at that time of $97,435.91. As set forth in that particular order, interest would accrue thereafter at the rate of 8% per annum.

VII.

The court will next address whether the defendant's conduct in refusing to comply with the state court decree and orders, since he admittedly did not transfer a one-half interest in the Invesco account to the plaintiff, constitutes a willful and malicious injury. As set forth hereinabove, the defendant was found to be in contempt of the state court orders on several occasions, not just for his failure to pay alimony and support obligations, but also because he failed to divide the marital assets. As examples, see the order of the Benton County Chancery Court, dated September 13, 2000, (Exhibit P-2), the order of the Benton County Circuit Court, dated August 6, 2001, (Exhibit P-3), and the order of the Benton County Circuit Court, dated August 6, 2002, (Exhibit P-4), all of which find the defendant in contempt and reference his failure to divide the three accounts. The aforesaid orders evidence that the state courts concluded that the defendant was guilty of willful and contumacious conduct. This court could easily apply the theory of collateral estoppel to these contempt orders and conclude that they have established that the defendant's conduct was indeed willful and malicious. However, that approach is not necessary due to the quantum of evidence presented at the trial of this proceeding.

This court has had several occasions to construe § 523(a)(6) of the Bankruptcy Code. In *In re Smith*, 302 B.R. 530 (Bankr. N.D. Miss. 2003), the debtors received a $39,887.00 cash advance from Structured Investments, which they agreed to repay through an unconditional transfer of their right to receive 120 monthly pension plan payments. In complete disregard for the terms of the agreement, Mr. Smith diverted subsequent payments to his own use, allegedly because he was having financial problems. The court concluded that this was equivalent to a conversion of the funds that had been contractually transferred to Structured Investments and commented as follows, to-wit:

> Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt resulting from a willful and malicious injury caused by the debtor to another entity or to the property of another entity. The Fifth Circuit Court of Appeals articulated its standard for the application of § 523(a)(6) in *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598 (5th Cir. 1998). The court concluded that an injury is "willful and malicious" where the debtor's conduct would cause injury according to an objective substantial certainty of harm standard or upon a showing that the debtor had a subjective motive to cause harm. *See also, Pharr v. Ford (In re Ford)*, 276 B.R. 561 (Bankr. N.D. Miss. 2001).
>
> Some courts have taken a more narrow approach to excepting debts from discharge pursuant to § 523(a)(6) than that adopted by the Fifth Circuit. These decisions essentially hold that for a debtor's conduct to bring a debt within the discharge exception for willful and malicious injury that the debtor must will or desire the harm, or believe that the injury is substantially certain to occur as a result of his behavior. *See, In re Markowitz*, 190 F.3d 455 (6th Cir. 1999); *Carrillo v. Su (In re Su)*, 290 F.3d 1140 (9th Cir. 2002); and *Thiara v. Spycher Brothers (In re Thiara)*, 285 B.R. 420 (9th Cir. BAP 2002). These cases reject the objective substantial certainty of harm standard, adopted by the Fifth Circuit in *Miller*, in favor of a completely subjective standard which requires proof of the debtor's intent.

*Id.* 534.

A case that is almost factually identical to the subject proceeding is *In re Ker*, 365 B.R. 807 (Bankr. S.D. Ohio 2007), which involved a debtor's actions in dissipating marital assets and violating court orders during divorce proceedings. There the court commented as follows, to-wit:

> Applying *Geiger* and *Markowitz*, courts within the Sixth Circuit and elsewhere have held that the kind of behavior in which Erik admittedly engaged–dissipating marital assets and violating court orders–warrants a finding of willful and malicious injury and nondischargeability under § 523(a)(6). *See Heyne v. Heyne (In re Heyne)*, 277 B.R. 364, 368 (Bankr. N.D. Ohio 2002); *Lipira v. Kaczmarski (In re Kaczmarski)*, 245 B.R. 555, 562 (Bankr. N.D. Ill. 2000); *Shteysel*, 221 B.R. at 491. In *Heyne*, the debtor disposed of the spouse's assets in violation of an order of the domestic relations court. The court held that the debt was nondischargeable under § 523(a)(6). *Heyne*, 277 B.R. at 368-69. Likewise, in *Kaczmarski*, the debtor withdrew funds from a retirement account and borrowed funds on a line of credit in violation of an order of the domestic relations court. The bankruptcy court held that the debtor was aware that his actions were substantially certain to lead to injury to his wife or her property interests and his actions were, therefore, willful. *Kaczmarski*, 245 B.R. at 561-62. The *Kaczmarski* court also held that, because the debtor withdrew the funds from the retirement account despite a court order prohibiting him from doing so and thereafter used those funds for his personal benefit, the injury to the nondebtor was willful and malicious. *Id.* at 562. Similarly, in *Shteysel*, after being served with a divorce complaint, the debtor liquidated his retirement account, savings account and investment account and transferred the proceeds to a family member. The court held that this action and the debtor's violation of a subsequent court order to make a payment to his spouse gave rise to a debt for willful and malicious injury. *Shteysel*, 221 B.R. at 490-91.
>
> Based on the authorities discussed above, the Court holds that Erik's withdrawal of the funds from the Retirement Accounts and misuse of those funds gave rise to a willful and malicious injury to Tanya and her property interests.
>
> . . . .
>
> ...The testimony at trial in this adversary proceeding supports no other conclusion but that Erik knew that harm was substantially certain to occur as a result of his actions and that he acted in conscious disregard of his duty under the court Orders.

*Id.* at 814-15.

In the proceeding before this court, there is no question but that the defendant willfully refused to divide the three marital accounts with the plaintiff. The defendant is a well educated individual and obviously knew that his failure to comply with the chancery court divorce decree and the other state court orders would cause the plaintiff economic injury. As such, the defendant's conduct amounts to a willful and malicious injury as contemplated by § 523(a)(6) of the Bankruptcy Code. The level and nature of the defendant's actions meet the standard articulated by the Fifth Circuit Court of Appeals in *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598 (5th Cir. 1998). *See also In re Keaty*, 397 F.3d 264 (5th Cir. 2005); *Texas v. Walker*, 142 F.3d 813 (5th Cir. 1998); and *Shcolnik v. Rapid Settlements, Ltd., et al., (In re Shcolnik)*, 670 F.3d 624 (5th Cir. 2012). As such, the plaintiff's claim against the defendant for his failure to transfer to her one-half of the marital assets is a non-dischargeable debt in the defendant's bankruptcy case. The amount of this indebtedness has been established by the Circuit Court of Benton County in its order dated July 24, 2006, (Exhibit D-5), in the sum of $97,435.91, plus interest accruing thereon beginning June 6, 2006, at the rate of 8% per annum.

An order consistent with this opinion will be entered contemporaneously herewith.

THIS the 30th day of March, 2012.

DAVID W. HOUSTON III
UNITED STATES BANKRUPTCY JUDGE